# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.           CRIMINAL ACTION NO. 5:18-cr-00026-05

SANJAY MEHTA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *United States' Objections to Order Setting Conditions of Release* (Document 333) and the *Order* (Document 330) and attachments entered by Magistrate Judge Omar J. Aboulhosn. The Court has further reviewed the relevant exhibits, financial documents, hearing transcripts, and Pretrial Services Report. Upon careful review, the Court finds that the conditions ordered by the Magistrate Judge will serve to reasonably assure the Defendant's appearance.

## STANDARD OF REVIEW

The Magistrate Judge's order details the law governing release or detention pending trial as contained in 18 U.S.C. § 3142. This Court reviews that order de novo, pursuant to 18 U.S.C. § 3145(a)(1). *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished) ("When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release."). The United States invoked the rebuttable presumption for

detention applicable to controlled substance offenses with potential sentences of ten or more years. 18 U.S.C. § 3142(e)(2). Thus, the issue is whether the Defendant has demonstrated that there are conditions of release that would reasonably assure his appearance at trial.

## FACTS AND EVIDENCE

The Defendant, along with eleven co-defendants, is charged with unlawful drug distribution, conspiracy, and money laundering offenses related to the operation of pain clinics. Defendant Mehta is also charged with two counts of distributing and dispensing controlled substances causing a death. The United States did not seek to detain any of the other Defendants, although one non-physician Defendant is serving a sentence on an unrelated conviction.

As to the risk of danger to the community, the Defendant's medical license was revoked in 2016, eliminating any prescribing authority. There is no evidence of any distribution of drugs outside of alleged improper prescriptions. The United States conceded that he is not a danger to the community during the February hearing. Thus, the primary issue is whether the Defendant is a flight risk.

During the initial hearing on February 22, 2018, the Defendant's counsel proffered that a search warrant was executed at the clinic in March of 2015, and he had made no attempt to flee in the nearly three years before the initial indictment was returned, despite awareness of the investigation. The Defendant has two children, including a daughter with special needs, who attend local schools. His parents live locally and assist him financially, including assisting in financing his defense in this case. He has travelled internationally for vacations on three occasions but has never lived internationally. The Defendant's father was born in India, but the Defendant's only visit to India occurred when he was three years old.

The United States pointed out that the Defendant failed to respond to two minor traffic infractions in 2008 and 2010, both of which he resolved in 2011. The Pretrial Services Report also indicated that there may be firearms in the residence, which the Defendant said belonged to his estranged wife and were kept in a safe to which he lacks access. The Defendant assured the court that any firearms would be removed prior to his release.

During the second detention hearing on July 10, 2018, the Defendant's counsel informed the Court that the Defendant's father had serious health concerns. The Defendant's counsel indicated that, if released on home detention, the Defendant would reside with his parents at their residence in the area. The United States cited financial information submitted by the Defendant's parents as evidence that the Defendant could access sufficient resources to flee and stressed that the two counts of distribution causing a death have twenty year mandatory minimum sentences, creating an incentive to flee. The Defendant's counsel stated that the United States had informed him and his client very clearly that the grand jury would be asked to return charges of distribution causing a death and that the Defendant would be facing a life sentence. He argued that other Defendants in this case had the means to flee and, while not facing charges with a potential penalty of twenty years to life, also face significant prison terms.

The Defendants' parents submitted financial information detailing their income and assets. Their net monthly income is approximately $3,650. They have some additional interest income from stocks, bonds, and savings. They have significant assets, including, stocks, bonds, and property, with total value in the high six figures to low seven figures.

# DISCUSSION

The Magistrate Judge found that the Defendant could be released under the standard conditions of release, with special conditions including a surety bond of $500,000, executed by his parents and secured by 10% cash deposited with the Clerk of the Court, monitored home detention, and residence with his parents. The Magistrate Judge further found that the Defendant's mother should serve as third-party custodian for him.

The United States argues that the nature of the offense, the potential penalties, and the weight of the evidence against the Defendant require detention. It argues that the Defendant may not be deterred from further criminal conduct, although it does not detail any specific criminal activity of concern. The United States notes the Defendant's parents' assets, as well as stating that the Defendant accrued more than $1,000,000 while working at the pain clinic from February 2013 through June 2015. In addition, the United States indicates that the Defendant and his wife withdrew over $300,000 in cash during that period, which, it speculates, could remain available to finance an attempt to flee.

As an initial matter, the Court finds that there is no evidence that the Defendant poses any ongoing danger to the community. His criminal history is limited to minor traffic violations. His alleged unlawful distribution of controlled substances was limited to improperly prescribing narcotics. He no longer has an active medical license and cannot prescribe medication or see patients. Thus, nothing in the record suggests that he poses a risk of criminal activity if he is released.

The Court also finds that the conditions proposed by the Magistrate Judge are sufficient to mitigate any flight risk. The Defendant has produced evidence of strong ties to the community.

His parents, wife, and children all live in this district. He has a special needs child attending local schools, and his father is in deteriorating health. The Defendant has lived in this community nearly his entire life. He made no attempt to flee during the nearly three-year period in which he was aware of the investigation, the likely charges, and the potential penalties attached to those charges. Thus, the Court finds that he has overcome the rebuttable presumption and shown, by a preponderance of the evidence, that he is not likely to flee.

In addition, the United States has not provided a clear explanation or evidence to support treating this Defendant differently than his co-defendants. Although he faces more serious charges, as the Magistrate Judge noted, most of the Defendants in this matter are facing multiple counts with lengthy potential sentences. Mr. Mehta is the only Defendant charged with crimes that technically carry a life sentence, but the other Defendants are facing potential effective life sentences as well. Although this Court has not fully investigated the financial resources of the other Defendants,[1] some continue to practice medicine, and several have had lengthy medical careers. Likewise, the weight of the evidence against the other Defendants is presumably similar to the weight of the evidence against Mr. Mehta.

Furthermore, the assets cited by the United States belong to the Defendant's parents. While it may be appropriate to give some consideration to Mr. Mehta's parents' resources in the context of bond, given that they are supporting him and helping finance his defense, there is no evidence to suggest that Mr. Mehta has the ability to directly access those assets. Mr. Mehta's parents are not accused of any criminal activity, and the United States' position requires assuming

---

1 Indeed, the Court is not aware of any effort on the part of the United States to explore the assets of relatives of the other Defendants in this matter.

that they are prepared to break the law to help their son flee. The Court will not make such an unsupported assumption.

In short, the Court declines to find that a substantial secured bond and home detention are insufficient to secure the Defendant's appearance simply because his parents have significant assets.[2]  Therefore, the United States' objections should be overruled.

**CONCLUSION**

Wherefore, after careful de novo review and consideration, the Court **ORDERS** that the *United States' Objections to Order Setting Conditions of Release* (Document 333) be **OVERRULED,** and that the Magistrate Judge's *Order* (Document 330) be **ADOPTED**. The Court further **ORDERS** that the Defendant be released upon satisfaction of the conditions contained in the *Appearance Bond* (Document 330-1) and *Order Setting Conditions of Release* (Document 330-2) entered by Judge Aboulhosn.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: July 31, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[2] The Court further notes the Defendant's parent's resources are being used to finance their retirement and support their grandchildren. They have significant assets, but not so significant as to eliminate any need to make choices regarding where to use those assets.

6